UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**MICHAEL JEFFREY STOTTS,**

Plaintiff,

Civil No. 00-1490 (ADM/SRN)

v.

**REPORT AND RECOMMENDATION**

**WARDEN CONSTANCE REESE, DR. ROBERT R. THOMPSON, and DR. CYGNOR,**

Defendants.

---

Plaintiff Michael Stotts is pro se.

Mary Jo Madigan, Esq., Assistant United States Attorney, for Defendants Constance C. Reese, Dr. Robert A. Thompson, and Dr. Cygnor.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above captioned matter is before the undersigned United States Magistrate Judge on the Defendants' motion for an order dismissing the Complaint in this matter pursuant to both Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction; and Fed. R. Civ. P. 12(b)(6 ), for failure to state a claim upon which relief may be granted. In the alternative, the Defendants move for summary judgment, pursuant to Fed. R. Civ. P. 56, on the grounds that no genuine issue of material fact precludes entry of judgment in their favor.

NOV 13 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

As a threshold matter, the Court notes that in his Complaint, Plaintiff Michael Stotts claims violations of his constitutional rights under 42 U.S.C. § 1983. However, as the Defendants correctly point out, Section 1983 does not apply to federal employees such as the Defendants named in this lawsuit. While this could be a fatal pleading flaw under ordinary circumstances, the Court recognizes Plaintiff Stotts' pro se status and notes that it appears he is suing the federal Defendants for alleged violations of his constitutional rights while those Defendants were performing their duties as federal officials. In such an instance, the Court must liberally construe[1] Plaintiff's self-styled Complaint as one seeking relief under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and will allow the case to continue under a Bivens analysis.

The matter has been referred to the undersigned Magistrate Judge of District Court for Report and Recommendation pursuant to 28 U.S.C. Section 636 and Local Rule 72.1. For the reasons stated below, the Court finds Plaintiff Stotts' Complaint legally defective in several ways, and recommends that the Defendants' motion to dismiss be granted. Alternatively, in light of the Declarations of Ronald J. Cygnor, M.D., Robert Thompson, M.D., Jenni Eveslage, R.N., and Mary A. Benning, Esq., along with the supporting exhibits,

---

[1] See Smith v. Bernards Regional Medical Center, 19 F.3d 1254 (8th Cir. 1994).

the Court recommends that the Defendants' motion for summary judgment be granted, and the action be dismissed with prejudice in its entirety.

**I. BACKGROUND**

Plaintiff Michael Stotts is a federal prisoner who, at times relevant to this lawsuit, was serving a 2,108 day sentence for a Mandatory Release Violation in connection with a conviction for Conspiring to Extort Money and Escape. See Exhibit A to the Declaration of Mary A. Benning (Benning Decl.). Plaintiff Stotts was confined for a portion of his sentence at the Federal Medical Center - Rochester -- precisely, from October 19, 1999, through August 15, 2000. See Exh. B to the Benning Decl. As of May 2, 2001, the date the Defendants filed their motions now under consideration in this Report, Mr. Stotts was confined at the United States Penitentiary in Beaumont, Texas, with a projected release date of July 22, 2001. See Exhs. B and C to the Benning Decl. The Defendants, each of whom are employed by the Bureau of Prisons at the Federal Medical Center (FMC) in Rochester, Minnesota, are: Constance Reese, Warden; Dr. Robert Thompson, Staff Physician; and Dr. Ronald Cygnor, Staff Physician.

In his Complaint, Plaintiff Michael Stotts alleges that the Defendants violated his constitutional rights by "subjecting him to torture and medical malpractice." See Complaint. Plaintiff seeks monetary damages in an

undisclosed amount, an investigation, an injunction placing him in protective custody, the return of medication, and indictments against the Defendants for the alleged mistreatment of his medical condition. Id.

The factual background[2] pertinent to the analysis of Plaintiff's Bivens claims is thoroughly set forth in twelve pages of the Defendants' Memorandum in Support of Motion to Dismiss or in the Alternative for Summary Judgment, pp. 4-16. The Court adopts these facts as wholly substantiated, and repeats them only in an encapsulated version here.

Plaintiff Michael Stotts arrived at FMC-Rochester on October 19, 1999, and, because he yelled obscenities at the Inmate Detention Staff during the intake screening process, he was charged with committing the prohibited act of Threatening Another Person, and was placed in Administrative Detention. See Exhibit E to the Benning Decl. Plaintiff was placed on "9-3", the inpatient hospital floor consisting of seven hospital rooms designed to secure the inmate-patient from the general inmate population, and is used for inmates with medical needs who require ongoing medical care while assigned to administrative detention or disciplinary segregation status. See Exhibit B to the Benning Decl.

Following an administrative disciplinary hearing on this charge,

[2] The factual background is taken from the Declarations of Ronald J. Cygnor, M.D., Robert Thompson, M.D., Jenni Eveslage, R.N., and Mary A. Benning, Esq., along with all attached exhibits.

the Discipline Hearing Officer concluded that plaintiff had committed the prohibited act charged and imposed the following sanctions: 1) loss of 60 days statutory good time; 2) 76 days disciplinary segregation; and 3) 30 days loss of telephone and commissary privileges. See Exhibit E to the Benning Decl.; see also 28 C.F.R. §§ 541.13-541.18.

After several weeks on 9-3, Plaintiff Stotts claims that he noticed sores breaking out on his legs, and that Defendant Dr. Thompson failed to provide treatment for these sores. See Complaint, ¶ 3 Statement of Claim. Plaintiff also claims that Dr. Thompson told Plaintiff that he could not receive medical treatment while assigned to "lock-up" status. Id.

At all times relevant to this case, Dr. Thompson was the staff physician who managed all patients assigned to the in-patient unit at FMC-Rochester, and was Plaintiff Stotts' primary physician. See Thompson Decl., ¶ 2).

Plaintiff's principal diagnoses while at FMC-Rochester were Diabetes Mellitus, Diabetic Peripheral Neuropathy, indeterminate back and leg pain, Hepatitis C[3] with Cirrhosis, Hypertension, and Morbid Obesity. See Cygnor Decl. ¶ 2; Thompson Decl. ¶ 2; Exhibit D to the Benning Decl., pp. 107-109.

---

[3] At FMC-Rochester, Mr. Stotts' Hepatis C was successfully treated with a course of Interferon and Riboviron which resulted in normal liver functioning. See Cygnor Decl. ¶ 2; Thompson Decl. ¶ 2.

Beginning on October 20, 1999, when Dr. Thompson first saw Mr. Stotts for complaints of pain in Stotts' back and lower extremities, Dr. Thompson noted that Plaintiff did not initially cooperate with medical testing, including a complete history and physical. See Thompson Decl. Dr. Thompson saw Plaintiff the very next day, October 21, 1999, in response to complaints of low back pain and withdrawal symptoms from Klonopin, a narcotic pain medication. See Exhibit D to the Benning Decl., p. 72. Plaintiff requested high doses of analgesics, namely Morphine, as well as Klonopin (a benzodiazepine) to manage his pain. See Thompson Decl., ¶ 3. In response to Plaintiff's complaints of pain in his back and lower extremities, Dr. Thompson prescribed Oxycodone, a narcotic pain medication, for myelopathy and sensory neuropathy.

Occasionally, Plaintiff Stotts complained of swollen legs, and Dr. Thompson observed a moderate amount of swelling primarily attributable to Plaintiff's diabetes and to the fact that Plaintiff sits in a wheelchair with his legs in the dependent position. See Thompson Decl., ¶ 4. Dr. Thompson prescribed diuretics to relieve the swelling in Plaintiff's lower legs, which Dr. Thompson stated was "really a remarkably slight amount given the fact that [Stotts] weighed over 300 pounds and spent the majority of his time in a wheelchair." Id.

Plaintiff's Complaint in this matter focuses on an alleged failure by

the Defendants to provide adequate medical care in response to his leg sores. The record reveals that the sores presented were superficial skin ulcerations – never more than half a dozen on both legs combined -- measuring between two and five millimeters in greatest dimension, deemed to be self-inflicted excoriations, (comparable to a scratch), and readily treatable. See Cygnor Decl., ¶¶ 3-4; Thompson Decl. ¶¶ 4-5. However, because of Mr. Stotts' known diabetic status, and his frequent refusal of care and treatment for his diabetes, medical staff were very concerned about the superficial abrasion on Mr. Stotts' legs. See Thompson Decl., ¶ 5. According to Dr. Thompson, people with diabetes who have any bread in the skin are monitored closely because there is a tendency for those breaks to become infected and, in turn, cause vascular problems as a direct result of the diabetes. Id. The record establishes that, in Mr. Stotts' case, the abrasions on his legs were superficially infected and did not require culturing because of their superficial nature. Id. Medical staff cautioned Plaintiff to avoid scratching and, Mr. Stotts' excoriations, in most instances, healed by themselves and did not require specific treatment. Id. On occasion, Plaintiff Stotts received Keflex, an oral antibiotic, utilized not so much to treat a widespread Celluloids, as to prevent gradual spread of a superficial infection. Id. The diagnosis regarding the excoriation was superficial dermal excoriations contaminated with bacteria, for which Dr. Thompson attests Plaintiff Stotts received appropriate care and treatment. In

fact, while on 9-3, Plaintiff Stotts was seen daily by medical staff, consisting of: Dr. Thompson, a Physician's Assistant, three Registered Nurses (including the Nursing Supervisor), a Pharmacist, and a Physical Therapist. See Thompson Decl., ¶ 6; Exhibit D to the Benning Decl., pp. 161-163.

There was one instance, on November 27, 1999, in which Mr. Stotts complained to nursing staff that he had fever and chills. See Exhibit D to the Benning Decl., p. 63. He had a temperature of 101.5, and his legs were hot to the touch. Id. Plaintiff was evaluated by a contract physician unfamiliar with Mr. Stotts' history, who diagnosed Plaintiff's condition as Celluloids, (an inflammation of soft tissue due to infection), of the lower extremity. Id. In response, the contract physician prescribed intravenous Nafcillin, an antibiotic. Id. On November 30, 1999, Dr. Thompson and several other medical staff members, met with Plaintiff Stotts to evaluate the Celluloids. See Exhibit D to the Benning Decl., p. 63-64. On December 2, 1999, the intravenous Nafcillin was discontinued, and Plaintiff was prescribed Dicloxacillin, an oral antibiotic, for treatment of his Celluloids. Id. at p. 94.

On December 7, 1999, Plaintiff was released from detention status, and assigned to the Outpatient Floor of Building 9, "9-2". See Exhibit F. to the Benning Decl. On that date, Dr. Ronald Cygnor became Plaintiff Stotts' primary physician, and remained so until May 2000. See Cygnor Decl., ¶ 2. Plaintiff alleges that his leg sores continued to worsen upon his transfer to 9-2,

and that Dr. Cygnor failed to treat him appropriately. See Complaint. During Plaintiff's stay on 9-2, he was treated with antibiotics for lesions on his lower back which cultured positive for Group B Streptococcus (Exhibit D to the Benning Decl., p. 52, 202); and for sores on his legs (Cygnor Decl.).

Dr. Cygnor requested that Plaintiff be evaluated by a Dermatologist from the Mayo Clinic. See Cygnor Decl., ¶4. On March 7, 2000, Plaintiff was seen by Dr. Marian McEvoy who noted Plaintiff's excoriations of the lower extremities and peripheral edema, confirmed that the excoriations were the products of his self-inflicted scratches (Cygnor Decl. ¶ 4), and recommended self-cleaning of the wounds twice each day, with dressing changes and topical antibiotics. See Exhibit A to the Thompson Decl. This was the treatment Plaintiff had been receiving prior to his appointment with the Dermatologist. See Cygnor Decl., ¶ 4.

Plaintiff claims that the Mayo Dermatologist Dr. McEvoy failed to accurately diagnose his skin condition, and that she erred by failing to perform a culture of the sore. See Complaint, Statement of Claim ¶ 3.

Plaintiff was seen again by the Dermatologist, Dr. McEvoy, on April 10, 2000, regarding the ulcerations on his legs, and additional diagnostic studies were completed that included a skin biopsy and subsequent culture. See Cygnor Decl., ¶ 4. Unusual conditions such as vasculitis and porphyria were ruled out. Id. Histology showed skin ulcerations with folliculitis and

secondary infection, which confirmed the diagnostic impression that Mr. Stotts' superficial ulcerations were secondarily infected and self-induced from scratching. Id. The culture was negative for Methicillin resistant staphylococcus aureus (MRSA), a bacteria that can be found as part of a person's normal skin flora, but when found in wound infections it is generally resistant to most types of antibiotics. Id.

On May 1, 2000, Plaintiff Stotts complained to the on-duty Physician's Assistant (PA) about sores on his legs, and the PA chose to culture the ulceration. See Cygnor Decl., ¶ 5. The culture ultimately yielded MRSA. Id. Plaintiff cooperated with treatment, and requested that he be allowed to remain on 9-2, and not be transferred to an isolation room on 9-3. Id. Plaintiff was allowed to remain on 9-2, provided that his leg wounds were covered with dressings and his pant legs. Id. With these precautions in place, it was determined by the medical personnel that Mr. Stotts did not present a danger to other inmates or staff, and the MRSA infection was successfully treated with antibiotics. Id. This protocol comports with the guidelines issued by the Center for Disease Control relative to treatment of any infection. See Exhibit A to the Declaration of Jenni Eveslage, R.N.

Plaintiff claims that staff failed to appropriately treat his infection, alleging that the MRSA was "highly contagious," and finds fault with the fact he was neither placed in isolation as required by "federal laws," nor given

intravenous drugs. See Complaint, Statement of Claim ¶¶ 4-7.

On May 23, 2000, Plaintiff was transferred from 9-2 to 9-3 for placement in Administrative Detention in connection with an incident report charging him with committing the prohibited act of Insolence Towards a Staff Member and Refusing to Obey an Order. See Exhibit G to the Benning Decl. As a result of his transfer, Plaintiff Stotts was again under the care of Dr. Thompson. See Cygnor Decl., ¶ 6. Plaintiff claims that the reason for his placement on 9-3 in Administrative Detention was "due to his persistent complaining about the MRSA" infection. See Complaint, Statement of Claim ¶ 3.

At FMC-Rochester, Plaintiff had been allowed to retain the Continuous Positive Airway Pressure (C-PAP) machine and the prescription for pain medication (sometimes morphine), with which he had arrived, until further testing could identify whether these items were medically indicated. See Thompson Decl., ¶ 9. Attempts had been made throughout Plaintiff's designation to FMC Rochester to perform diagnostic tests to ascertain whether his stated need for the C-PAP machine and morphine were necessary, but, for instance, Plaintiff refused to undergo a sleep study at the Mayo Clinic to identify whether or not he has sleep apnea. See Exhibit D to the Benning Decl., p. 108; Thompson Decl. ¶9. In the absence of an objective medical reason for the machine, and because medical staff frequently observed Plaintiff

sleeping soundly through the night without a C-PAP machine, Dr. Thompson discontinued the C-PAP machine. Id.

In addition, in September 1999, Plaintiff was referred for a Neurology consultation with the Department of Neurology at the Mayo Clinic to evaluate the back and leg pain upon which Plaintiff based his need for morphine. Id. The MRI examination revealed mild degenerative changes to the spine, and a myelogram was recommended to further assess the matter, but Plaintiff refused. Id. Plaintiff was seen again by a Neurologist in May 2000 for assessment of his leg and back pain. See Exhibit D to the Benning Decl., pp. 230-233. The Neurologist concluded that Plaintiff's diabetic peripheral neuropathy and his cervical and lumbar pain were of indeterminate etiology. Id. Accordingly, Dr. Thomson slowly tapered the morphine because he could not identify objective indicia to warrant continuation of morphine, upon which Plaintiff Stotts had become dependent. See Thompson Decl., ¶ 9.

On June 1, 2000, Plaintiff cut the inside of his left arm with a razor blade, claiming the gesture was in response to the possibility that he may be assigned to the Special Housing Unit. See Exhibit D. to the Benning Decl., p. 283. The wound required 22 stitches, and Plaintiff was placed on suicide watch with an Inmate Companion. Id. at pp. 18-19. Plaintiff was evaluated regularly by a Staff Psychologist thereafter. Id. at pp. 16-18. He now claims that Dr. Thompson's action in discontinuing his C-PAP machine and morphine

caused him to suffer in a manner prompting self-injurious behavior. See Complaint, Statement of Claim ¶ 9.

## I. DISCUSSION

### A. Defendants' Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) for Lack of Subject Matter Jurisdiction, and Pursuant to Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim

The Defendants contend that because Plaintiff Stotts failed to exhaust his administrative remedies before filing this lawsuit, his suit is barred by the Prison Litigation Reform Act (PLRA), and therefore the Complaint should be dismissed. See Alexander v. Hawk, 159 F.3d 1321 (11th Cir. 1998); Brown v. Toombs, 139 F.3d 1102 (6th Cir. 1998), cert. denied, 119 S.Ct. 88 (1998); Morgan v. Arizona Department of Corrections, 976 F.Supp. 892 (D. Ariz. 1997).

Indeed, the PLRA, as amended, 42 U.S.C. § 1997e[4], requires prisoners to exhaust administrative remedies before filing suit, and it bars a suit brought by a prisoner with respect to prison conditions under Section 1983 or any other federal law until the prisoner has exhausted available administrative remedies. 42 U.S.C. § 1997e (a).

The Bureau of Prisons has promulgated an administrative remedy system which is codified at 28 C.F.R. §§ 542.10 through 542.16 (2001). The

---

[4] Pub.L. 104-134, Title I, § 101(a)[Title VIII, § 803(d), Apr. 26, 1996, 110 Stat. 1321-71; renumbered Title I Pub.L. 104-140, § 1(a), May 2, 1996, 110 Stat. 1327.

administrative remedy procedures afford inmates confined in federal correctional facilities the opportunity to seek formal review of any complaint relating to any aspect of their confinement, which, in turn, provide prison staff an opportunity to resolve such issues in-house.

Plaintiff Stotts acknowledges he has not exhausted the BOP administrative remedy procedure, but claims that officials at FMC-Rochester obstructed his ability to pursue his grievances. See Complaint, Section II C. Plaintiff states that prison officials refused to issue the necessary forms, "much less process" his claims. Id.

The Defendants assert that Plaintiff Stotts' claim of obstruction defies logic because BOP records reveal that Mr. Stotts filed 14 formal administrative remedy complaints during his ten months at FMC-Rochester. See Exh. H to the Benning Decl. Furthermore, the Defendants argue that the record not only establishes that Plaintiff Stotts failed to exhaust the available administrative remedy procedure on any issue presented in this case, but that the facts establish that officials at FMC-Rochester did provide Plaintiff with the necessary forms to file a formal grievance, and that such forms were processed. Id.

It is apparent, based on the uncontroverted evidence of record, that Plaintiff Stotts bypassed the administrative remedies available to him at FMC-Rochester, and instead of attempting to comply with the exhaustion

requirement, filed this lawsuit. This is not permissible under the provisions of the PLRA, 42 U.S.C. 1997e where Congress expressly stated that its objective in requiring prisoners to exhaust their administrative remedies prior to filing suit is "to curtail the ability of prisoners to bring frivolous and malicious lawsuits by forcing prisoners to exhaust all administrative remedies before bringing suit in federal court." See 141 Cong. Rec. H1472-06 at H1480 (daily ed. Feb. 9, 1995).

Plaintiff Stotts has offered no plausible reason why he failed to address the claims he presents in this lawsuit via the administrative process available to him at FMC-Rochester. The Defendants argue that in order to carry out Congress' intentions relative to the PLRA, a court should dismiss a complaint if a prisoner has not exhausted all available administrative remedies. Alexander v. Hawk, 159 F.3d 1321 (11th Cir. 1998); Brown v. Toombs, 139 F.3d 1102 (6th Cir. 1998), cert. denied, 119 S.Ct. 88 (1998); Morgan v. Arizona Department of Corrections, 976 F.Supp. 892 (D. Ariz. 1997).

Indeed, because Mr. Stotts did not present the claims raised in his Complaint via the administrative grievance procedure offered at FMC-Rochester, the Court recommends that Mr. Stotts Complaint be dismissed as barred by the Prison Litigation Reform Act.

**B. Dismissal of Defendant Constance Reese**

The Defendants correctly assert that because there is no

respondeat superior liability attributable to supervisory officials for the allegedly unconstitutional acts of their subordinates, Defendant Constance Reese, the Warden of FMC-Rochester, must be dismissed. See Rizzo v. Goode, 423 U.S. 362, 377 (1976); Smith v. Marcantonio, 910 F.2d at 502; Pachaly v. City of Lynchburg, 897 F.2d 723, 726 (4th Cir. 1990). More specifically, the Defendants contend that the doctrine of respondeat superior does not apply to Bivens actions, as complaints alleging constitutional violations must contain specific allegations as to the involvement of the named defendant. Wilson v. City of North Little Rock , 801 F.2d 316, 322-23 (8th Cir. 1986); Hahn v. McLey, 737 F.2d 771 (8th Cir. 1984).

Plaintiff Stotts has sued Defendant Reese in her individual capacity, alleging that she violated his constitutional rights in the performance of her official duties as the Warden at FMC-Rochester. However, the Defendants argue that the mere act of occupying a supervisory position is an insufficient basis upon which to impose vicarious liability, and liability may not attach merely because a subordinate may have violated someone's rights. See Ouzts v. Cummins, 825 F.2d 1276 (8th Cir. 1987); Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997). The Defendant asserts that in order for Plaintiff Stotts to succeed on his claim against Defendant Reese, he must plead an affirmative link between her personal participation as the Warden, her exercise of control or discretion, or her failure to supervise, and the alleged violation of

his constitutional rights. See Otey, 121 F.3d at 1155; Tallman v. Reagan, 846 F.2d 494, 495 (8th Cir. 1988); Rosenberg v. Crandell, 56 F.3d 35 (8th Cir. 1995); McKay v. Hammock, 730 F.2d 1367, 1374 (10th Cir. 1984). "Without a showing of direct responsibility for the improper action, liability will not lie against a supervisory official." Rascon v. Hardiman, 803 F.2d 269, 273 (7th Cir. 1986).

Plaintiff Stotts' sole allegation connecting Defendant Reese to his cause of action is that as the Warden, she is the ultimate "boss" of the physicians, and had knowledge of the actions or inactions of the physicians and failed to take corrective action. See Complaint, Statement of Claim ¶ 11. Because Plaintiff has failed to allege any facts that would personally connect Defendant Reese to the alleged violations, his claims against Defendant Reese should be dismissed.

**C. Defendants' Motion for Summary Judgment**

The Defendants assert they are entitled to summary judgment because there are no facts to support Plaintiff's claim that his constitutional rights were violated. The Defendants assert that where summary judgment is sought in the context of a Bivens action, the burden in on the Plaintiff to allege a violation of clearly established law, and failure to do so merits dismissal before the commencement of discovery. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); Taylor v. Bowers, 966 F.2d 417, 420 (8th Cir. 1992), cert. denied, 113 S.Ct. 394 (1992). The Defendants assert, and this Court agrees, that Plaintiff

Michael Stotts has failed to establish a genuine issue of material fact to support an Eighth Amendment deprivation of medical treatment claim.

### 1. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). When a motion for summary judgment has been made and supported by the pleadings and affidavits as provided in Rule 56(c), the burden shifts to the party opposing the motion to put forth evidence demonstrating that a trial is required because a disputed issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In satisfying this burden, however, the non-moving party must do more than simply establish doubt as to the material facts. The party opposing summary judgment may not "rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 586, n.11; Krenik v. County of Le Seuer, 47 F.3d 953, 957 (8th Cir. 1995). Fed. R. Civ. P. 56 (e). Pro se pleadings should be given a liberal construction and held to a less stringent standard than attorney drafted pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). However, the

plaintiff still must present evidence to defeat a properly supported summary judgment motion and may not rely upon conclusory allegations and unsupported assertions. Dunavant v. Moore, 907 F.2d 77, 80 (8th Cir. 1990).

### 2. Legal Analysis

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on those convicted of crimes. Wilson v. Seiter, 501 U.S. 294 (1991). "It has long been established that prison officials violate a prisoner's Eighth Amendment right to be free from cruel and unusual punishment when the officials are deliberately indifferent to the prisoner's serious medical needs." Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995), citing Estelle v. Gamble, 429 U.S. at 104. "A prison official exhibits deliberate indifference when the official actually 'knows of and disregards' a prisoner's serious medical needs." Boyd, supra, quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994).

> "An Eighth Amendment claim that prison officials were deliberately indifferent to the medical needs of inmates involves both an objective and a subjective component. [Citation omitted.] The plaintiffs must demonstrate (1) that they suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs. [Citation omitted.] 'Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'' Hudson v. McMillian, 503 U.S. 1, 9,... (1992). '[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge.' Long

> v. Nix, 86 F.3d 761, 765 (8th Cir.1996). As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Id."

Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997).

Thus, there are several elements to an Eighth Amendment claim brought against a prison official based on an alleged denial of medical care. First, the prisoner must show some specific "objectively serious medical need," i.e., one that is both readily discernible and involves "an excessive risk to the inmate's health." Second, the defendant must have been personally aware of the inmate's particular medical need and its seriousness. Third, the defendant himself must have been deliberately indifferent to such serious medical need. "Deliberate indifference may be demonstrated," for example, "by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment." Dulany, 132 F.3d at 1239.

Finally, a mere difference of opinion concerning the treatment offered does not rise to the level of an Eighth Amendment violation. See Estelle v. Gamble, 429 U.S. 97, 107 (1976)(matters of medical judgment are not sufficient for deliberate indifference); Smith v. Marcantonio, 910 F.2d 500 (8th Cir. 1990). Thus, complaints regarding the manner of treatment must rise above a mere disagreement between inmate and medical staff with respect to diagnosis and treatment.

In this case, there are several fatal flaws in Plaintiff's Eighth

Amendment claim against the Defendants. First, Plaintiff Stotts has offered no evidence showing that the Defendants were deliberately indifferent to the sores on his legs. The record in this case certainly shows that, while at FMC-Rochester, Plaintiff had excoriations on his legs which were determined to be self-inflicted, and in which various types of infections developed, all of them successfully treated with antibiotics. Because Plaintiff is diabetic, these leg sores (never more than half a dozen on both legs combined), were taken very seriously by the medical personnel on both 9-2 and 9-3, the units in which Mr. Stotts was housed. The record establishes that, far from ignoring Plaintiff's escalating condition, Plaintiff was seen regularly by medical staff, and his condition was carefully monitored and successfully treated. Treatment consisted of the administration of oral, topical and intravenous antibiotics, dressings, and instruction to Plaintiff not to scratch the sores. In addition, Plaintiff twice was seen by a Mayo Clinic Dermatologist whose diagnosis and recommended course of treatment only served to collaborate those of Drs. Thompson and Cygnor. Plaintiff has not demonstrated that he had any genuine need for any specific medical care or treatment beyond that which was provided to him. There is absolutely no evidence that the Defendants were deliberately indifferent to the sores on Plaintiff's legs.

Drs. Thompson and Cygnor attest that additional culturing of Plaintiff's leg sores, complete isolation during the treatment of Plaintiff's MRSA

infection, continuation of Plaintiff's C-PAP machine, and the treatment of indeterminate leg and back pain with morphine, were medically unnecessary in Plaintiff's case. Plaintiff's demands for certain types of tests and course of treatment, and his claims that his constitutional rights were violated when the Defendants failed to follow the course of treatment he believes they should have, are completely unsubstantiated by the medical record before this Court. The Plaintiff disagrees with Drs. Thompson and Cygnor's course of treatment, and has deemed a different course necessary, but his disagreement does not give rise to a constitutional violation. "Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir. 1994).

Furthermore, Plaintiff has offered no evidence substantiating his allegation that the Defendants failed to follow proper protocols in response to his MRSA infection. This was not, as Plaintiff claims, a staph infection such as would trigger special measures and isolation. See Eveslage Decl., ¶¶ 3, 4 and 5; Cygnor Decl., ¶ 5; Thompson Decl. ¶ 8. Accordingly, there was no "objectively serious" medical need as alleged. See Aswegan v. Henry, 49 F.3d 461, 464 (8th Cir. 1995)(to constitute an objectively serious medical need it must be readily apparent to a layperson or supported by medical evidence); Kayser v. Caspari, 16 F.3d at 281 (insufficient evidence of serious medical need

when the medical need claimed is based on bare assertion of inmate.)

In summation, there is simply no evidence in the record that supports Plaintiff's allegations that the Defendants deliberately disregarded his medical needs. Rather, all of the evidence leads to a conclusion which is wholly contrary to Plaintiff's claims. Conclusory assertions are not sufficient to withstand a motion for summary judgment. See Roberson v. Bradshaw, 198 F.3d 645, 647 (8th Cir. 1999); Miller v. Solem, 728 F.2d 1020, 1026 (8th Cir.), cert. denied, 469 U.S. 841 (1984).

For the reasons discussed above, the Court concludes that the Defendants' alternative motion for summary judgment should be granted. Plaintiff has cited no evidence that would allow a jury to conclude that the Defendants deliberately disregarded any of his serious medical needs.

Finally, the Court will briefly touch on the remaining legal deficiencies in Plaintiff's Complaint.

The Defendants argue that they are entitled to qualified immunity because their actions did not violate any clearly established rights of the Plaintiff, and the facts demonstrate that the Defendants, at all times, acted within the scope of their employment. The Court agrees.

It is well-settled that government officials sued in their individual capacities under Bivens-type actions can avail themselves of the defense of qualified immunity. Butz v. Economou, 438 U.S. 478, 508 (1978). The

doctrine of qualified immunity, as it applies to federal officers accused of constitutional wrongdoing, is set forth in Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), and provides that a government official is shielded from liability for monetary damages where the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Plaintiff failed to establish that any of his established rights were violated by the Defendants' conduct.

To the extent Plaintiff seeks monetary damages against the Defendants in their official capacities, there is no requisite independent jurisdictional basis to proceed , (see Reamer v. United States, 459 F.2d 709, 710 (4th Cir. 1972), as the action must be construed as one brought against the United States, Kentucky v. Graham, 473 U.S. 159, 166-67 (1985)(plaintiff seeking damages against a federal employee in his/her official capacity is deemed to be an action against the government.). The United States has not waived its sovereign immunity for a Bivens cause of action. F.D.I.C. v. Meyer, 510 U.S. 471 (1994).

Hence, because the Complaint in this action fails to identify an independent basis of jurisdiction to support a claim for money damages against the federal Defendants in their official capacities, or against the United States, this Court lacks subject matter jurisdiction over any claim for money damages against the Defendants in their official capacities.

For all of these reasons, the Court recommends granting the Defendants' Motion to Dismiss or in the alternative Defendant's motion for summary judgment, and dismissing the Complaint with prejudice.

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1) The Defendants' Motion to Dismiss (Doc. No. 30) be **GRANTED**;

or

2) The Defendants' Alternative Motion for Summary Judgment (Doc. No. 30) be **GRANTED,** and this action be dismissed with prejudice.

Dated: November 13, 2001

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the

District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.